809 P.2d 641

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Leon WATCHMAN, Defendant–Appellant.**

**No. 12212.**

Court of Appeals of New Mexico.

Jan. 22, 1991.

Certiorari Denied March 4, 1991.

Hal Stratton, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

B.W. Freyburger, Navajo Legal Aid & Defender Office, Window Rock, for defendant-appellant.

## OPINION

DONNELLY, Judge.

This case raises the question of whether defendant's prior uncounseled tribal court convictions together with an uncounseled municipal court conviction may properly be utilized as a basis for imposing an aggravated sentence upon defendant following his subsequent felony conviction.

Defendant appeals from the sentences imposed following his entry of guilty pleas to two counts of vehicular homicide. We (1) answer several issues summarily; and discuss: (2) whether the trial court erred in relying upon defendant's prior uncounseled court convictions as a basis for imposing an aggravated sentence; and (3) whether the trial court erred in denying presentence confinement credit. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Aragon*, 109 N.M. 632, 788 P.2d 932 (Ct.App.1990). Defendant's convictions are affirmed; we remand, however, for resentencing.

On October 15, 1988, defendant, while driving and intoxicated, was involved in a head-on collision with another vehicle near Gallup. As a result of the accident, both the driver of the other vehicle and a passenger in defendant's car were killed. After state police arrived at the scene, Officer Robert Cook instructed an ambulance crew to take defendant to the hospital and inform the hospital authorities that he was not to be permitted to leave because the police had imposed a hold on him. Cook testified that he did not formally advise defendant at the accident scene that he was under arrest because defendant had lost consciousness; he confirmed, however, that he directed that a blood sample be drawn from defendant at the hospital for purposes of determining his blood alcohol level and that he had instructed hospital authorities to call him when defendant was able to leave the hospital.

Defendant initially pled not guilty to the charges against him, and the case was set for trial. After the first day of trial, defendant withdrew his initial pleas and entered pleas of guilty to two counts of vehicular homicide: a felony charge involving the death of Matthew Griego, and a misdemeanor charge involving the death of Franklin Shorty. The trial court requested a presentence report. The report received by the court contained a Navajo Police

Department rap sheet indicating that defendant had three prior convictions in tribal court for driving while intoxicated, and a similar conviction in the Gallup Municipal Court. The report erroneously attributed to defendant several convictions belonging to Leo Watchman, a different individual. Upon being apprised by defendant of the error, the state moved to strike the references to the convictions relating to Leo Watchman from the presentence report. The court granted the motion.

Defendant also moved that the court exclude evidence of his uncounseled tribal court and municipal court convictions from consideration at the sentencing hearing. The trial court denied the motion. At the conclusion of the sentencing hearing, after considering evidence and argument from both the state and defendant, the trial court found that defendant's basic sentence for the felony homicide conviction should be enhanced by an additional year because of aggravating circumstances.

## I. ISSUES SUMMARILY DECIDED

■ (A) Defendant contends that the trial court erred in refusing to find that he was indigent. He argues that affidavits submitted to the court show that he was indigent and that this issue was not contested by the state. He also asserts that the trial court erred in failing to hold a hearing on his motion for determination of indigency. We agree with defendant that the trial court should have explicitly ruled upon his motion for determination of indigency, pursuant to NMSA 1978, Section 31–16–5 (Repl.Pamp.1984). *See also* SCRA 1986, 5–109. No reasons were given for denial of the motion, and the record does not indicate that the state contested defendant's claim of indigency. Defendant's motion was deemed denied by operation of law. *See* SCRA 1986, 5–601(F). Resolution of an accused's claim of indigency is an integral aspect of a defendant's right to counsel. *See* SCRA 1986, 5–303(A); NMSA 1978, § 31–16–3 (Repl.Pamp.1984). When a defendant makes a reasonable showing of indigency, the trial court has a duty to inquire into the facts relied upon by the defendant. *State v. Anaya,* 76 N.M. 572,

417 P.2d 58 (1966). When a defendant's motion is uncontested, we agree with the defendant that the better procedure in such cases is for the trial court to either grant the motion or to expressly indicate the basis for its denial.

■ Under the record before us, however, defendant has failed to show how denial of his motion prejudiced him in the instant case. Defendant has been ably represented by the Navajo Legal Aid and Defender Office at all critical stages of the proceedings herein, including trial, at the time of his entry of pleas of guilty, and on appeal. Under this posture we find that defendant was not prejudiced. In order for error to be reversible, it must be demonstrated to have been prejudicial. *State v. Wesson,* 83 N.M. 480, 493 P.2d 965 (Ct.App. 1972); *see Gantar v. Cox,* 74 N.M. 526, 395 P.2d 354 (1964). *See also* SCRA 1986, 5–113(A). On remand, the court should permit defendant to renew his motion as it relates to further proceedings involving defendant.

■ (B) Defendant also argues that the trial court erred in denying his motion for a diagnostic commitment. The authority of the court to order defendant to undergo a diagnostic commitment is one of several options available to the court at sentencing. *See* NMSA 1978, § 31–20–3 (Repl. Pamp.1990). Determination of whether to order a diagnostic commitment is within the trial court's discretion. *See State v. Kenneman,* 98 N.M. 794, 653 P.2d 170 (Ct.App.1982). In this case, the court, in the exercise of its discretion, chose to conduct a sentencing hearing without first ordering a diagnostic commitment. The sentence imposed was within the prescribed statutory limits and sentencing options available to the court. § 31–20–3. The court is not required to order a diagnostic commitment prior to imposing sentence. *See State v. Kenneman.* Defendant has failed to show that the court abused its discretion in denying his motion for diagnostic commitment.

■ (C) Defendant also complains that the written order and sentence signed by

the court materially varied from the judge's oral statements at the sentencing hearing and failed to comply with the provisions of NMSA 1978, Section 31–18–15.1(A) (Repl.Pamp.1990). At the hearing, the judge did not state whether defendant's two sentences were to run consecutively; the written judgment and sentence subsequently entered by the court, however, specified that they were to be served consecutively.

■ As observed in *State v. McCall*, 160 Ariz. 119, 770 P.2d 1165 (1989), *cert. denied*, — U.S. ——, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990), the preferred practice is for a sentencing judge to note the factors argued in mitigation and indicate whether they are outweighed by any aggravating factors; however, "a sentencing judge [is not required] to make detailed, exhaustive findings or cite every claim or nuance advanced...." *Id.* at 125, 770 P.2d at 1171. *See also* 3 ABA, *Standards for Criminal Justice* § 18–6.6 and Commentary, at 18.-482–.489 (1980). Here, the written judgment and sentence entered by the court indicated that aggravating factors were relied upon by the court, and it expressly provided that defendant's sentences were to be served consecutively. Any question regarding the court's intention on this issue was resolved by the court's written judgment. *State v. Diaz*, 100 N.M. 524, 673 P.2d 501 (1983) (oral pronouncement of sentence is not a final judgment; in reviewing sentence appellate court guided by written judgment), *cert. denied*, 469 U.S. 1016, 105 S.Ct. 429, 83 L.Ed.2d 356 (1984). *See also State v. Bernal*, 106 N.M. 117, 739 P.2d 986 (Ct.App.1987) (oral statement of court contained in record indicating reasons for alteration of basic sentence may suffice to permit meaningful appellate review); *State v. Muzio*, 105 N.M. 352, 355, 732 P.2d 879, 882 (Ct.App.1987) (written order or judgment signed by the court is legally effective to implement the court's ruling).

## II. VALIDITY OF PRIOR UNCOUNSELED CONVICTIONS

■ Defendant challenges the factors relied upon by the trial court in aggravation

of his felony conviction and contends that the trial court did not make a proper record of its reasons for aggravating the basic sentence.

At the conclusion of the sentencing hearing, the trial court found that defendant's sentence on the felony charge should be enhanced by one year, stating that it had been influenced by defendant's history of driving while intoxicated, his record of prior convictions, and that:

> Under [these] circumstances I have no choice. It would be a violation of my oath to place this man under any kind of * * * deferred sentence. Nobody poured that whiskey down him, or the beer, or whatever it was. That was a voluntary act that continued the night before and continued the next morning. I have pity for [defendant], but I have remorse for the victims' families.
>
> The Court is going to find that aggravating circumstances do exist and the Court is going to impose the maximum possible sentence allowed by law of three years plus one year for the aggravated circumstances, or a total of four years, plus the ninety days on the misdemeanor. We [have] somehow got to get a message to these people that fill themselves with * * * alcohol and get into an automobile * * *.

The written judgment and sentence subsequently entered by the court also recited, among other things, that the court "finds a basis for aggravating circumstances in that the *Defendant has previously had four Driving Under the Influence convictions either in the Courts of the Navajo Nation or in Gallup Municipal Court.*" (Emphasis added.)

In *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the Supreme Court, building upon its prior decisions in *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), held that a defendant's prior uncounseled criminal convictions may not be used under an enhanced penalty

statute to convert a subsequent conviction into a higher category of criminal offense. *See also Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (convictions obtained following guilty plea absent a valid waiver of a defendant's trial rights are unconstitutional); *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) (constitutionally infirm convictions may not be used to enhance a defendant's sentence).

The Supreme Court in *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), also held that where a trial court in imposing sentence gives explicit consideration to the defendant's record of previous convictions, and it is shown that the prior convictions were constitutionally invalid, the defendant's sentence should be vacated and the case remanded to the trial court for redetermination of the sentence to be imposed. The *Tucker* court reiterated that " '[permitting] *a conviction obtained in violation* of *Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense* * * * [would] *erode the principle of that case* [,] ' " and is impermissible. 404 U.S. at 449, 92 S.Ct. at 592 (citing *Burgett v. Texas,* 389 U.S. at 115, 88 S.Ct. at 262) (emphasis added).

This court, in *State v. Ulibarri,* 96 N.M. 511, 632 P.2d 746 (Ct.App.1981), adhering to the rationale articulated in *Baldasar,* held that it was impermissible for a sentencing judge to sentence a defendant as a second offender, thereby enhancing the penalty imposed from a petty misdemeanor to a high misdemeanor, when the record indicates that the defendant's prior conviction was obtained without benefit of counsel and the record did not affirmatively disclose that the defendant had waived his right to counsel.

The state, while conceding that the trial court relied upon defendant's prior convictions in finding that his current felony conviction should be aggravated, argues that defendant's uncounseled prior convictions incurred in the Navajo Tribal Court were not constitutionally invalid because tribal courts are not required by the federal Constitution to provide counsel to Indian criminal defendants who reside on the reservation. *Tom v. Sutton,* 533 F.2d 1101 (9th Cir.1976) [citing *Settler v. Lameer,* 507 F.2d 231 (9th Cir.1974); *United States v. Ant,* 882 F.2d 1389 (9th Cir.1989) (Indian defendants are not entitled to court-appointed attorneys in tribal courts)].

The arguments advanced by the state focus principally upon its contentions that a defendant's prior uncounseled Indian tribal court convictions are factors which may properly be considered by a state trial judge in aggravating a subsequent sentence because such convictions fall within an exception noted in *United States v. Ant; United States v. Benally,* 756 F.2d 773 (10th Cir.1985). The state's answer brief does not contend, however, that defendant's prior uncounseled municipal court conviction comes within the ambit of the claimed exception or satisfies the requirements of *Ulibarri.*

Two federal courts have considered the issue of whether uncounseled Indian tribal court convictions may properly be considered by other courts in subsequent criminal proceedings. *See United States v. Ant, United States v. Benally.* Defendant urges us to follow *Ant,* in which the court held that an uncounseled tribal court conviction was inadmissible to establish the defendant's guilt in a subsequent federal prosecution for the same criminal act. The state relies upon *Benally,* where the court stated, "Indian tribes are quasi-sovereign nations and * * * the protections of the Constitution do not apply to tribal actions brought against Indians in tribal courts * * *. [Thus,] [i]n sentencing an Indian the [federal] court may consider the defendant's uncounselled tribal convictions." *Id.* at 779.

Other courts have similarly examined related questions concerning the propriety of state or federal courts' considering, in sentencing proceedings, a defendant's prior convictions imposed by courts in foreign countries. *See Houle v. United States,* 493 F.2d 915 (5th Cir.1974) (permitting evidence of prior Canadian convictions); *contra Cal-*

*ifornia v. La Fargue,* 147 Cal.App.3d 878, 195 Cal.Rptr. 438 (1983) (rejecting evidence of prior Cuban convictions). In Michigan, the courts employ a case-by-case analysis to determine the admissibility of such evidence and permit consideration of such convictions where it is shown that the foreign convictions were attended by sufficient procedural safeguards to satisfy due process requirements. *See People v. Gaines,* 129 Mich.App. 439, 341 N.W.2d 519 (1983).

Both the sixth amendment to the United States Constitution and article II, section 14 of the New Mexico Constitution guarantee the right to the assistance of counsel in any criminal prosecution. In *Scott v. Illinois,* the court held that the sixth and fourteenth amendments to the United States Constitution preclude an indigent criminal defendant from being sentenced to a term of imprisonment unless the state has afforded him the right to the assistance of counsel in his defense. *See also State v. Sanchez,* 94 N.M. 521, 612 P.2d 1332 (Ct.App.1980).

Following the rationale of *Baldasar* and *Ulibarri,* we conclude that the trial court erred in aggravating defendant's felony conviction based upon defendant's prior uncounseled DWI convictions obtained in the Navajo Tribal Court and the Gallup Municipal Court. We decline to adopt a blanket rule permitting the use of uncounseled tribal court convictions at sentencing hearings to alter a defendant's basic sentence. Instead, we conclude that the rationale relied upon in *Benally* is inconsistent with *Ulibarri* and fails to satisfy fundamental due process requirements of the New Mexico Constitution. *See also State v. Cooper,* 343 N.W.2d 485 (Iowa 1984) (lack of reliability of prior uncounseled conviction of indigent defendant prevents enhancement of later sentence); *State v. Hamilton,* 104 N.M. 614, 725 P.2d 590 (Ct.App.1986) (sixth amendment to United States Constitution is a jurisdictional barrier to the conviction and sentence of an indigent defendant who is denied representation of counsel); *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App. 1976) (statement of defendant not shown to have been voluntarily made cannot be admitted in evidence against accused over his objection). If defendant's initial uncounseled misdemeanor convictions cannot be utilized as a basis to support a finding of guilt or to enhance punishment, it is improper to utilize such evidence as a factor in aggravating a subsequent sentence of imprisonment imposed on defendant.

 In restricting the use of uncounseled tribal or municipal court convictions, we emphasize, however, that not every uncounseled conviction of a defendant is barred from consideration by a trial court. For example, a court in imposing sentence may consider a defendant's prior uncounseled conviction where the record affirmatively indicates that the defendant knowingly, voluntarily and intelligently waived counsel. NMSA 1978, § 31–15–12(D) (1984 Repl.Pamp.). *See also McCrae v. Blackburn,* 793 F.2d 684 (5th Cir.), *cert. denied,* 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411; *State v. Greene,* 92 N.M. 347, 588 P.2d 548 (1978); *State v. Gallegos,* 104 N.M. 247, 719 P.2d 1268 (Ct. App.1986), *State v. Baughman,* 79 N.M. 442, 444 P.2d 769 (Ct.App.1968). A defendant has the duty to call the trial court's attention to any inaccuracies contained in the presentence report for his claim of invalidity of prior uncounseled convictions. *State v. Smith,* 217 Mont. 461, 705 P.2d 1087 (1985), *cert. denied,* 474 U.S. 1073, 106 S.Ct. 837, 88 L.Ed.2d 808 (1986); *see also State v. Lack,* 98 N.M. 500, 650 P.2d 22 (Ct.App.1982). An unchallenged prior conviction is entitled to a presumption of regularity. *State v. Anderson,* 160 Ariz. 412, 773 P.2d 971 (1989). Additionally, defendant has the burden to make a reasonable showing that he is indigent and financially unable to employ counsel. *State v. Anaya. See also State ex rel. Peters v. McIntosh,* 80 N.M. 496, 458 P.2d 222 (1969). Similarly, defendant bears the burden of demonstrating that convictions obtained in foreign jurisdictions were obtained under circumstances which failed to provide adequate procedural safeguards. *See State v. Anderson; State v. Smith.*

 Once defendant makes a prima facie showing challenging the validity of his

prior uncounseled convictions, the burden shifts to the state to establish by a preponderance of the evidence that the conviction was not obtained in violation of defendant's constitutional rights. *See, e.g., State v. Greene* (state bears a heavy burden of establishing waiver by a preponderance of the evidence). *See also Watkins v. People,* 655 P.2d 834 (Colo.1983) (once defendant makes a prima facie showing that a prior conviction was unconstitutionally obtained, conviction is not admissible unless prosecution establishes that conviction was in accord with defendant's constitutional rights). Defendant offered evidence that his prior tribal court and municipal court convictions were uncounseled and that he was indigent. The state did not make any showing that the prior convictions relied upon by the trial court in aggravating the sentence were obtained under circumstances which would satisfy the requirements of *Ulibarri.* Thus, under the record before us, it was improper for the trial court at sentencing to consider defendant's prior convictions as a basis for aggravating his sentence. *See United States v. Tucker* (remanding case for reconsideration of sentence). *See also Tomlinson v. State,* 98 N.M. 213, 647 P.2d 415 (1982) (remand for resentencing required where defendant was deprived of opportunity for allocution).

The state points to the existence of other factors referred to by the trial court at the time of sentencing, apart from defendant's prior convictions, which may have also provided a proper basis for aggravation of defendant's sentence. In this regard, the state asserts that, in determining whether to alter defendant's felony conviction, the trial court may properly consider the circumstances surrounding the commission of the offense for which he is to be sentenced. *See State v. Segotta,* 100 N.M. 498, 672 P.2d 1129 (1983); *State v. Encinias,* 104 N.M. 740, 726 P.2d 1174 (Ct.App.1986). Although we agree that there was other evidence in the record apart from the evidence of defendant's prior uncounseled convictions which might have provided a basis for aggravation of defendant's sentence, we are unable to ascertain from the record herein whether the trial court would have

aggravated defendant's sentence absent its reliance upon defendant's prior tribal court convictions. Moreover, the judgment and sentence specifically indicated that the trial court also considered defendant's uncounseled municipal court conviction as a factor in its decision to aggravate defendant's felony conviction. *See State v. Ulibarri.* Under these circumstances, we conclude that defendant's sentence should be vacated and the case remanded to the trial court for resentencing.

## III. PRESENTENCE CONFINEMENT CREDIT

■ Defendant's final point raised on appeal argues that he is entitled to presentence confinement credit for the time spent from October 15 to November 18, 1988, in the hospital, following his accident. NMSA 1978, Section 31–20–12 (Repl.Pamp.1984), provides that a person held in official confinement under a felony charge, upon conviction, shall be given credit for the period spent in presentence confinement against any sentence finally imposed for that offense. *See also State v. Miranda,* 108 N.M. 789, 779 P.2d 976 (Ct.App.1989).

Defendant contends that he was held in official confinement during the period of his hospitalization. He points out that Officer Cook indicated that he was not formally placed under arrest at the scene of the accident because defendant had lost consciousness, but that it was undisputed that Cook requested that a blood alcohol test be administered to him while he remained unconscious, pursuant to the Implied Consent Act. *See* NMSA 1978, §§ 66–8–105 to –112 (Repl.Pamp.1987).

Defendant also contends that he was in custody while in the hospital because hospital officials had been instructed by Cook to inform him when defendant was ready to be released from the hospital. Finally, defendant points out that he was later formally arrested prior to his release from the hospital and that under any circumstances he was held in official custody from that point. The trial court's sentencing order credits defendant for only the three days he spent in the Gallup jail after his release

from the hospital but denies credit for any portion of his hospitalization. Defendant's motion to reconsider his sentence with regard to his alleged official confinement while in the hospital was also denied.

■ The question of whether an individual has been taken into custody or placed under arrest presents a factual issue to be resolved by the trier of fact. *See Armijo v. State,* 105 N.M. 771, 773, 737 P.2d 552, 554 (Ct.App.1987) ("The question * * * is whether a reasonable person in appellant's situation would have understood himself to be in custody or [whether defendant was held] under restraints comparable to those associated with a formal arrest.").

The state argues that the police officer's testimony that defendant was not free to leave and was under a police hold does not mean that defendant was deprived of his freedom of movement for the purpose of invoking a right to presentence confinement credit. *See Armijo v. State.* The state does not dispute that shortly after the accident Officer Cook directed that a blood sample be taken from defendant, pursuant to the Implied Consent Act, and that defendant's pretrial motion to suppress the results of the state-ordered blood test was denied.

In general, the Implied Consent Act requires that in order to be tested a suspect must first be placed under arrest. § 66–8–107(A); *State v. Richerson,* 87 N.M. 437, 535 P.2d 644 (Ct.App.1975). *Richerson* held that the results of a blood alcohol test are inadmissible when defendant was not under arrest at the time of the test and when neither he nor a member of his family had consented to the test. *See also State v. Copeland,* 105 N.M. 27, 727 P.2d 1342 (Ct.App.1986) (Implied Consent Act takes effect upon individual's arrest). An exception to requiring a formal arrest prior to administration of a blood alcohol test is when the defendant is unconscious. *State v. Wyrostek,* 108 N.M. 140, 767 P.2d 379 (Ct.App.1988); *see also* NMSA 1978, § 66–8–108.

At the hearing on defendant's motion to suppress, the prosecution argued to the trial court that the blood sample was taken from defendant in conformity with the Implied Consent Act. There is nothing in the record to indicate whether defendant was arrested and the test was administered or whether defendant was unconscious and the test was administered. Either way, the blood sample would have been taken in conformity with the Implied Consent Act. However, under the second scenario, defendant would not have been under arrest. On remand the court should first determine the date defendant was in fact taken into official custody or placed under arrest and then award defendant proper presentence confinement credit in accord with Section 31–20–12. The fact that defendant was hospitalized following his being taken into custody does not preclude award of presentence confinement credit for the time spent in the hospital. *State v. La Badie,* 87 N.M. 391, 534 P.2d 483 (Ct.App.1975) (defendant held officially confined for purposes of Section 31–20–12 during his stay at mental hospital).

CONCLUSION

Defendant's sentences are vacated, and the cause is remanded to the trial court for resentencing and for award of presentence confinement credit consistent with this opinion.

IT IS SO ORDERED.

APODACA and CHAVEZ, JJ., concur.