STATE V. BURROWS

This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellee,**
**v.**
**KENNETH ALLIN BURROWS,**
**Defendant-Appellant.**

Docket No. S-1-SC-36475
SUPREME COURT OF NEW MEXICO
June 3, 2019

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY, Bradford J. Dalley, District Judge

**COUNSEL**

Bennett J. Baur, Chief Public Defender, John Charles Bennett, Assistant Appellate Defender, Santa Fe, NM for Appellant

Hector H. Balderas, Attorney General, Emily C. Tyson-Jorgenson, Assistant Attorney General, Santa Fe, NM, for Appellee

**JUDGES**

C. SHANNON BACON, Justice. WE CONCUR:  JUDITH K. NAKAMURA, Chief Justice, BARBARA J. VIGIL, Justice, MICHAEL E. VIGIL, Justice, DAVID K. THOMSON, Justice

**AUTHOR:** C. SHANNON BACON

**DECISION**

**BACON, Justice.**

**{1}** Defendant, Kenneth Allin Burrows, appeals his first-degree murder conviction. He raises two issues [1] on appeal:  (1) whether the trial court's denial of his motion to dismiss

---

[1] In his statement of the issues, Defendant raises three issues including ineffective assistance of counsel.  In his brief in chief, however, Defendant abandons his ineffective assistance of counsel claim.  See State v. Hosteen, 1996-NMCA-084, ¶ 20, 122 N.M.

on double jeopardy grounds was in error, and (2) whether the trial court erred in admitting a recording of a telephone call. Concluding that there was no prosecutorial misconduct justifying dismissal and no error in admitting the recorded telephone call, we affirm.

## I.    BACKGROUND

**{2}**    On January 18, 2014, Defendant and co-defendant, Tiki Marez, went to the home of Daniel Boone to "take care of" him. Boone was purportedly an informant. To lure Boone out of his home, Marez knocked on his front door and told Boone and his wife that Marez's car battery had died and that she needed her battery jumped. Boone met Marez near her car, where Defendant was hiding in the nearby bushes. Boone jumped Marez's car battery and while Boone was disconnecting the jumper cables, Defendant emerged from the bushes. Boone began to run away. As Boone was running away from the car, Defendant shot Boone. Boone died of his gunshot wounds at the scene.

**{3}**    Defendant was charged with first-degree murder (willful and deliberate), tampering with evidence (capital crime or first- or second-degree felony) and possession of a firearm or destructive device by felon. The possession count was severed prior to trial and ultimately the State dismissed this count. The State tried the case twice, both times to juries. The first trial resulted in a mistrial.

**{4}**    In its pretrial order, the trial court ordered that the State could not mention "subsequent violence and/or alleged criminal behaviors by anyone accompanying [Defendant] to the Daniel Boone residence in November of 2013."

**{5}**    At the first trial, Defendant moved for a mistrial on three occasions, asserting violations of the trial court's pretrial order. First, Marez, while testifying on direct, was asked if she remembered any major disagreements that interfered with her intimate relationship with Defendant. She responded, "We got arrested." Defense counsel objected that this statement was an inappropriate comment on prior bad acts and moved for a mistrial. The trial court denied the request for mistrial.

**{6}**    Next, during his direct testimony, Detective Nyce, the lead investigator in this matter, referred to speaking with Defendant "one time at county jail." Defense counsel asked for a mistrial. While the trial court was not happy with the comment, it denied the request for a mistrial, stating, "I don't think that we got [sic] to a mistrial point yet."

**{7}**    Finally, on Detective Nyce's redirect examination, the prosecution questioned him about following up on certain evidence. The questions and answers unfolded as follows:

---

228, 923 P.2d 595 ("[I]ssues must be adequately argued and supported by authority in the brief-in-chief or they will be deemed abandoned.").

State: Now, counsel asked you about your conversation with Mr. Maes. Did you look into everything that he told you?

Nyce: Yes sir.

State: Okay. And did every single word he tell you help?

Nyce: No.

State: Did some of it help?

Nyce: Yes.

State: What?

Nyce: I learned about an incident where a door was kicked in and who was with Mr. Maes at the time the door was kicked in.

State: And did the name Kenneth Burrows help in moving forward?

Defense counsel objected and asked to approach. At the bench, defense counsel asked for a mistrial, asserting that this testimony violated the court's pretrial order. Based on the cumulative nature of the testimony, the trial court granted a mistrial. The trial court ordered that a second trial would commence with a new jury panel.

**{8}** Prior to the second trial, defense counsel made a motion to dismiss on double jeopardy grounds, arguing that prosecutorial misconduct necessitated a mistrial in Defendant's first trial. Defense counsel asserted that the State goaded him into asking for a mistrial based on the testimony of Detective Nyce and testimony regarding prior bad acts. The trial court denied the motion and specifically found that there was no prosecutorial misconduct. The second trial proceeded.

**{9}** At trial, one of the facts at issue was whether boot prints at the scene of the crime matched Defendant's boots. Marez testified that on the night of the shooting, Defendant was wearing a long-sleeved black t-shirt, jeans, and boots. She further testified that the boots Defendant was wearing were the only boots she had ever seen him wear and she identified the boots at trial.

**{10}** The trial court also allowed testimony, over Defendant's objection, about a recorded phone conversation between Defendant and his girlfriend ("Girlfriend"). In the course of his investigation, Detective Nyce listened to many recordings of telephone calls between Defendant and Girlfriend while Defendant was in custody. One such conversation included a very brief discussion of Defendant's boots. Prior to the admission of the testimony, Defendant sought to exclude this testimony by arguing to the trial court that Girlfriend's statements were inadmissible hearsay and violated the

Confrontation Clause. The trial court overruled Defendant's objection. Over Defendant's objection, the State asked Detective Nyce the following:

> State: My question is—after the search warrant was executed at [Defendant's] house and the boots were collected as evidence, did you have an occasion to hear a recording of a telephone conversation in which [Defendant] made a comment relating to boots?
>
> Nyce: Yes.
>
> State: And what did you hear?
>
> Nyce: The conversation I heard was: "No, ah, your riding boots, your black ones, your old ones. Oh, okay."
>
> State: And the "Oh, okay" came from who?
>
> Nyce: [Defendant].

**{11}** At the conclusion of trial, the jury convicted Defendant of first-degree murder and acquitted Defendant of tampering with evidence. The trial court sentenced Defendant to life in prison to be served concurrently with a sentence in federal prison for an unrelated crime.

**{12}** On appeal, Defendant asserts that the trial court erred in denying his motion to dismiss on double jeopardy grounds and that the trial court erred in admitting testimony regarding the telephone call between Defendant and Girlfriend. We affirm.

## II.    DISCUSSION

### A.    No Prosecutorial Misconduct

**{13}** Defendant argues that the trial court erred in denying Defendant's motion to dismiss on double jeopardy grounds. Defendant, relying upon *State v. Breit*, 1996-NMSC-067, 122 N.M. 655, 930 P.2d 792, argues that the State goaded his counsel into moving for a mistrial by means of prosecutorial misconduct. Defendant, however, does not apply *Breit* to the facts of this case.[2] Further, Defendant concedes not only that the

---

[2] We note that Defendant's appeal is brought under State v. Boyer, 1985-NMCA-029, ¶ 17, 103 N.M. 655, 712 P.2d 1 and State v. Franklin, 1967-NMSC-151, ¶ 9, 78 N.M. 127, 428 P.2d 982, and accordingly Defendant does not support either of his arguments with references to the record or application of the law to the facts of this case. This Court need not address conclusory statements lacking appropriate argument or citation to authority. State v. Clifford, 1994-NMSC-048, ¶ 19, 117 N.M.508, 873 P.2d 254. We can affirm on this basis alone.

trial court found no prosecutorial misconduct, but also that "no prosecution misconduct is evident on the CD of the trial."

**{14}**  In *Breit*, this Court held that where prosecutorial misconduct is pervasive, incessant, and outrageous, principles of double jeopardy will bar reprosecution.  1996-NMSC-067, ¶ 20.  In *Breit*, the prosecutor referenced matters that were not admissible, exaggerated claims, argued with witnesses, posed improper questions to witnesses, engaged in sarcasm and scorn toward opposing counsel, and directed belligerent statements toward opposing counsel.  *Id.* ¶¶ 41-43.  Unlike in *Breit*, the prosecutor here was not the source of the comments leading to a mistrial.  This Court's double jeopardy analysis for prosecutorial misconduct does not extend to unsolicited statements by witnesses.  *See State v. Hernandez*, 2017-NMCA-020, ¶ 29, 388 P.3d 1016.  In the complete absence of prosecutorial misconduct, double jeopardy did not bar the retrial of Defendant.  *State v. Gonzales*, 2002-NMCA-071, ¶ 14, 132 N.M. 420, 49 P.3d 681 (holding that only severe prosecutorial misconduct may give rise to the extreme sanction of dismissal).

**B.      The Tape-Recorded Telephone Conversation**

**{15}**  Defendant challenges the admission of Detective Nyce's testimony regarding a tape-recorded telephone call between Defendant and Girlfriend based on hearsay and Confrontation Clause grounds.

**{16}**  Defendant concedes that his own statements are not hearsay.  Rather, Defendant's objection focuses on Detective Nyce's summary of Girlfriend's portions of the conversation.  Defendant objected to Detective Nyce's testimony recounting the identification of Defendant's black riding boots.

**{17}**  Trial court evidentiary rulings are reviewed for an abuse of discretion.  *State v. Patterson*, 2017-NMCA-045, ¶ 6, 395 P.3d 543.  The trial court abuses its discretion when its ruling is "untenable or not justified by reason."  *Id.* ¶ 11 (internal quotation marks and citation omitted).  Here, the trial court did not err in admitting the summary of the brief telephone conversation between Defendant and Girlfriend because Girlfriend's portion of the conversation was a "reciprocal and integrated utterance between the two parties." *State v. Castillo-Sanchez*, 1999-NMCA-085, ¶ 23, 127 N.M. 540, 984 P.2d 787 (quoting *United States v. Lemonakis*, 485 F.2d 941, 948 (D.C. Cir. 1973)).  Absent Girlfriend's portion of the conversation, there would be no context for Defendant's statement.  In addition, Defendant adopted Girlfriend's statement regarding the identification of the boots.  *See* Rule 11-801(D)(2)(b) NMRA.  An adoption of such a statement is not hearsay.  *Id.*

**{18}**  As for Defendant's Confrontation Clause argument, the only argument he advances in his brief in chief is that when there is no reasonable possibility that a constitutional error affected the verdict, the error is harmless.  *See State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110.  While this is a correct statement of the law, Defendant does not apply this adage to the facts of this case.  Defendant does not

articulate how the use of his own statements or statements he adopted violated his confrontation rights.  We conclude that there was no error.

## III.  CONCLUSION

**{19}**  For the reasons stated herein, we affirm Defendant's conviction for first-degree murder.

**{20}   IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**